*Decisions will be entered under Rule 50.*

CRATER LAKE MACHINERY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60386. Filed December 31, 1957.

*Rollin P. Rodolph, C. P. A.*, for the petitioner.
*John D. Picco, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The Commissioner determined a deficiency in the income tax of the petitioner of $27,850.64 for 1951 and one of $29,017.02 for 1952. The issue for decision arises under the Internal Revenue Code of 1939, as amended by the Excess Profits Tax Act of 1950 and the Revenue Act of 1951. It provides for excess profits tax credits for the taxable years based upon the excess profits net income of a base period consisting of the years 1946 through 1949. Sec. 435. The petitioner purchased the assets of Reed Tractor and Equipment Co., a partnership, on September 26, 1949. The Code permits the purchaser to use, in addition to its own base period income, all or a limited portion of the base period income of the business purchased. It requires the elimination of that part of the seller's base period income which represents "duplication." Sec. 474. The only issue here is whether the Commissioner erred in eliminating, as a duplication, a part of the base period earnings of the purchased business in the computation of the petitioner's excess profits tax credits. The facts are found as stipulated.

The petitioner filed its Federal tax returns for 1951 and 1952 with the collector of internal revenue for the district of Oregon. It was incorporated in 1930 as the Crater Lake Lumber Co. and engaged in the lumber business until 1943 when it began to liquidate that business. It sold the last of its standing timber in 1946. It changed its name to the Crater Lake Machinery Co. on September 23, 1949, and on the 26th purchased all of the properties (except cash) of Reed Tractor and Equipment Co. for $482,859.31. The latter had conducted a prosperous caterpillar tractor dealership during the base period years.

The stipulated sources of the purchase price were as follows:

| Source | Amount |
|---|---|
| (1) Funds from the sale of a substantial portion of the petitioner's assets | $161, 739. 31 |
| (2) Funds borrowed from the First National Bank, evidenced by a 90-day 4½ per cent note | 100, 000. 00 |
| (3) Funds borrowed from the First National Bank, evidenced by a 5-year 4½ per cent note | 100, 000. 00 |
| (4) Funds borrowed from G. C. Lorenz, evidenced by a 5-year 5 per cent note | 100, 000. 00 |
| (5) Cash paid in for new stock issued by petitioner | 21, 120. 00 |
| Total consideration | 482, 859. 31 |

It was further stipulated that all of the above items (1) and (2) and $20,000 of item (3) did not constitute a bona fide long-term increase in the capital structure of the petitioner within the meaning of Regulations 130, section 40.474–4 (a) (2) (ii), but all of items (4) and (5) and $80,000 of item (3) did constitute a bona fide long-term in-

crease in the capital structure of the petition within the meaning of that regulation.

The base period excess profits net income (or deficit) of the petitioner and of the tractor company was as follows:

| Year | Petitioner | Tractor company |
|---|---|---|
| 1946 | $5, 860. 39 | $152, 496. 22 |
| 1947 | (2, 192. 10) | 218, 133. 63 |
| 1948 | (350. 67) | 288, 647. 38 |
| 1949 [1] | (2, 071. 44) | 173, 287. 80 |
| 1949 | 20, 796. 13 | |

[1] Jan. 1 to Sept. 26.

The petitioner, in computing its excess profits tax credits for the taxable years, determined the average base period excess profits net income as follows:

| | 1946 | 1947 | 1948 | 1949 |
|---|---|---|---|---|
| Excess profits net income of Reed Tractor and Equipment Co. | $152, 496. 22 | $218, 133. 63 | $288, 647. 38 | $154, 827. 75 |
| Add: Excess profits net income (or loss) of Crater Lake Machinery Co. | 5, 860. 39 | (2, 579. 10) | (350. 67) | 20, 796. 13 |
| Aggregate excess profits net income | 158, 356. 61 | 215, 554. 53 | 288, 296. 71 | 175, 623. 88 |
| Average of 3 highest years | | | | 226, 491. 71 |

The Commissioner, in his notice of deficiency, determined that the petitioner was limited to the use of only 41.652 per cent of the base period earnings of the Reed Tractor and Equipment Co., and the excess profits credit thus computed under section 474, being less than the alternative credit computed under the "growth formula" provided in section 435 (e), he used the larger alternative credit in determining the deficiencies.

The petitioner has alleged that the Commissioner's exclusion of a portion of the earnings of the purchased company in the computation of excess profits credits under section 474, as a duplication of earnings in a part IV transaction, was erroneous. All alternative assignments of error in the petition have been abandoned and counsel for the petitioner stated at the trial that its position was that—

there is no duplication where there is [are] no transactions between the companies, and where one has a negative base period net income and the other has a large income. Our whole case apparently revolves around this question of duplication of earnings in a base period—excess profits tax earnings in a base period. * * *

The Commissioner noted at the trial that the stipulation was so drawn that if the petitioner failed on its definition of the duplica-

tion of earnings the "bona fide long term increase[s] in the capital structure" of the petitioner were agreed upon.

Part IV consists of section 474, which is entitled "EXCESS PROFITS CREDIT BASED ON INCOME—CERTAIN TAXABLE ACQUISITIONS." A purchasing corporation is defined to include the present petitioner which acquired substantially all the properties of a partnership and the partnership is a "selling corporation" within the definition given. Section 474(b) provides, *inter alia*, that—

the excess profits net income of a purchasing corporation for any month of its base period shall be its excess profits net income (or deficit therein), computed without reference to this part, and increased or decreased, as the case may be, by the addition or reduction resulting from including * * * the excess profits net income (or deficit therein) for such month of the selling corporation * * *

It is provided in subsection (f) that the Secretary shall, by regulations, prescribe rules for the application of part IV and—

Such regulations shall include the following rules.

   \*       \*       \*       \*       \*       \*       \*

    (4) DUPLICATION.—Rules for the application under this part of the principles of section 462 (j) (1) and the other provisions of part II relating to the prevention of duplication.

The regulations promulgated pursuant to that provision, and applicable here, state that they are to prevent duplications in base period income where "assets of a purchasing corporation are used to purchase properties of a selling corporation" and "[i]n such cases the excess profits net income of the selling corporation, or portion thereof attributable to the properties acquired by the purchasing corporation, shall be excluded in determining the purchasing corporation's excess profits net income or deficit and its average base period net income with reference to the recomputation provided under part IV." Regs. 130, sec. 40.474–4 (a) (1), as amended by T. D. 5998, 1953–1 C. B. 372. The same regulation in (a) (2) (ii) further provides that no adjustment is necessary "[w]here properties of the selling corporation are acquired through a bona fide long-term increase in the capital structure of the purchasing corporation made in conjunction with and for the purpose of such acquisition" and defines "bona fide long-term increase in the capital structure."

Senate Report No. 781, 82d Cong., 1st Sess., p. 75, contains the following with relation to the enactment of section 474 of the Code:

Part II of the Excess Profits Tax Act of 1950 provides rules under which an acquiring corporation may utilize the earnings experience of a predecessor corporation in computing its own average earnings base. However, under the Excess Profits Tax Act of 1950, the acquiring corporation may use this earnings experience only where the assets of the predecessor corporation were acquired in certain tax-free exchanges. In general, these tax-free exchanges occur where

the assets of a predecessor corporation are acquired by the acquiring corporation in exchange for its stock. Under the present law the earnings experience of a predecessor corporation may not be used by an acquiring corporation where the assets were acquired by purchase for cash or in some other type of taxable exchange. * * *

Your committee believes that, in the case of taxable exchanges, subject to certain limitations, where purchasing corporations have obtained substantially all of the assets of a predecessor corporation and such predecessor is liquidated, the earnings experience base of the predecessor corporation should be available to the purchasing corporation. * * * However, it is to be permitted the use of this base only to the extent that new funds were used for the purchase of these assets. * * *

The Commissioner has eliminated as a duplication only that part of the tractor company's base period excess profits tax net income which bears the same relation to the whole as the stipulated portion of the purchase price which did not come from "a bona fide long-term increase in the [its] capital structure" bears to the whole purchase price. The rest he did not eliminate. His action appears to be within the intent of Congress to eliminate the income of the seller to the extent that the assets owned and used by the purchaser during the part of the base period preceding the purchase were later used to acquire the assets of the other entity, as indicated by the legislative history of the statutory provisions.

The petitioner argues "that there is no 'duplication' where all three effective years for tax purposes carry a deficit," i. e., "[w]here the funds of a corporation are inactive and produce no excess profits net income, and are joined with other funds to acquire productive assets, they are new productive funds and there is no duplication, or double counting in the determination of the excess profits credit." No supporting authority is cited. The record does not show earnings or deficits by months but it shows that the petitioner had excess profits net income in 1946 and for the full year 1949. So it is not true that its funds were inactive and unproductive and it is not shown that "all three effective years" carried a deficit. The argument, even if supported by the stipulated facts, would be without merit. Section 474 expressly refers and applies to a corporation which had deficits rather than excess profits net income in the base period. Congress did not define "duplication" but left that expressly for the regulations. However, the quoted legislative history shows generally what Congress had in mind. Regulations 130, section 40.474–4 (a) (1) and (2), as applied here, are consistent therewith. The intention of Congress, as properly interpreted in the existing regulations, was that a corporation which operated during the base period could not, for the purpose of this credit, use property which it had operated (regardless of how successful or unsuccessful those operations had been), to buy the benefit of the base period operations of another, but could acquire

those benefits only to the extent that the assets of the seller were not acquired by use of assets which the purchasing corporation had had during the preceding part of the base period.

The Commissioner, in determining the deficiencies, has correctly applied the law and the regulations to the stipulated facts in this case, and the petitioner has failed to show that the Commissioner erred to any extent or that the regulations are inapplicable or improper. *National Bank of Commerce of Seattle*, 27 T. C. 762.

Reviewed by the Court.

*Decision will be entered for the respondent.*